*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DACODA STEVEN BROWNFIELD,

Defendant-Appellant.

UNPUBLISHED
April 01, 2025
11:49 AM

No. 363292
Genesee Circuit Court
LC No. 20-046351-FC

ON REMAND

Before: M. J. KELLY, P.J., and MURRAY and RICK, JJ.

PER CURIAM.

This case returns to us on remand from our Supreme Court with directions to consider whether the conduct of defendant, Dacoda Brownfield, was " 'similarly egregious' to 'sadism, torture, [or] excessive brutality' " so as to justify a score of 50 points for offense variable (OV) 7. *People v Brownfield*, ___ Mich ___; 14 NW3d 435 (2024), quoting MCL 777.37(1)(a). For the reasons state in this opinion, we conclude that it was and so we again affirm.

## I. BASIC FACTS

The facts were set forth in our prior opinion:

This case arises out of defendant's 2018 sexual assault of a high-school classmate. Defendant and the victim first met in high school when the victim was 16 years old and defendant was 15 years old. The two briefly dated, but they amicably broke up after approximately one to two weeks. Shortly after the break up, defendant asked the victim if she wanted to go to his house to watch a movie. Defendant indicated that his mother and sister would be home, and the victim agreed because she believed that defendant's mother and sister would be present.

The victim testified that defendant's sister was in the living room when they arrived, but defendant's mother was not home. Defendant led the victim to the garage, where they spent several minutes looking at their phones. When the victim

-1-

asked about the movie, defendant responded that the television in the garage had not worked in years. The victim asked why he invited her over to watch a movie knowing that the television did not work, and defendant admitted that he lied about the movie because he wanted "alone time" with her. The victim indicated to defendant that she was uncomfortable staying at his house because he had gotten her there under "false pretenses," and she told him that she wanted to leave.

Defendant then picked the victim up from the chair that she was sitting in and placed her on a futon. Defendant knelt in front of the victim, put his arm against her stomach, and attempted to remove her pants. The victim told defendant to stop, and when he did not, she became increasingly upset and began to kick at him and protest loudly. Despite this, defendant forced himself on top of the victim and removed her pants and underwear. The victim continued to protest, but defendant flipped her onto her stomach, removed his pants, and vaginally penetrated her with his penis. Defendant was significantly bigger than the victim, so she was unable to move or get up. The victim continued to protest loudly as defendant assaulted her, which prompted defendant to grab the victim by the back of her head, shove her face into a pillow, and tell her to "shut up" so that his sister did not hear her. Defendant ejaculated after a few minutes, and both he and the victim got off of the futon. The victim stated that she was "panicked" after the assault, and focused on getting dressed. Defendant did not say anything to the victim after the assault; he simply got dressed and grabbed a beer from a refrigerator in the garage. The victim immediately called her grandfather to pick her up, and she left defendant's home within five minutes of the assault ending. [*People v Brownfield*, unpublished per curiam opinion of the Court of Appeals, issued April 25, 2024 (Docket No. 363292); slip op at 1-2, vacated in part ___ Mich ___; 14 NW3d 435 (2024).]

Following a jury trial, defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(1)(f), and was sentenced to 11 to 25 years' imprisonment.

## II. OV 7

### A. STANDARD OF REVIEW

This Court reviews for clear error a trial court's factual determinations under the statutory sentencing guidelines. *People v Ziegler (On Remand)*, 343 Mich App 406, 410; 997 NW2d 493 (2022). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Lydic*, 335 Mich App 486, 490; 967 NW2d 847 (2021) (quotation marks and citations omitted). We review de novo the trial court's application of the facts to the statutory law set forth in the guidelines. *Ziegler*, 343 Mich App at 411. A court "may consider all record evidence" when scoring the sentencing guidelines, including information from a sentencing hearing and information from a presentence investigation report (PSIR). *People v McChester*, 310 Mich App 354, 356, 358; 873 NW2d 646 (2015).

## B. ANALYSIS

MCL 777.37(1)(a) states that 50 points are to be assessed for OV 7 if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" In *Lydic*, this Court explained:

> If the case involves conduct consisting of one or more of the categories of sadism, torture, or excessive brutality, then OV 7 applies. If the case does not involve one or more of the categories of sadism, torture, or excessive brutality, then the sentencing court must determine whether the case involves 'similarly egregious conduct' to at least one of those categories. If it does, the court also must determine whether the conduct [was designed to substantially increase] a victim's fear and anxiety. If all those factors are met, then OV 7 applies for purposes of the fourth category of conduct." [*Lydic*, 335 Mich App at 496-497.]

For the same reasons stated in our prior opinion, we conclude that defendant's conduct was designed to substantially increase his victim's fear and anxiety. See *Brownfield*, unpub op at 8-9 (explaining that the record supported the court's finding that "defendant engaged in conduct that was designed to substantially increase the victim's fear and anxiety by engaging in conduct beyond what was necessary to commit CSC-I."). But in our prior opinion, we did not explicitly state whether defendant's conduct was similarly egregious to sadism, torture, or excessive brutality. As directed by our Supreme Court, we now address that question.

We begin by considering three cases addressing the appropriateness of scoring OV 7 at 50 points. First, in *Lydic*, this Court determined that the defendant's conduct was both excessively brutal and similarly egregious to sadism, reasoning:

> Assault by strangulation does not require the use of a weapon, and by using a belt, defendant increased the physical severity of the offense. The use of the belt thus satisfies the requirement of excessive brutality, and OV 7 applies. Additionally, death threats are not encompassed by the offense of assault by strangulation. Whether a death threat can itself be sadistic—a question we need not decide—the particular threats at issue here were, at a minimum, akin to sadism; the same is true of defendant's taunting of TK during the assault because defendant told TK that not only was TK about to die, but TK's body would be found by her minor son. Such threats were severe enough to be treated as "similarly egregious" to sadism based on their infliction of humiliation and other emotional suffering. [*Lydic*, 335 Mich App at 498-499.]

Next, in *People v Rodriguez*, 327 Mich App 573, 581; 935 NW2d 51 (2019), this Court concluded that the defendant's conduct did not support a score of 50 points for OV 7, reasoning:

> [A]lthough defendant threatened [the victim] when demanding the money and other belongings [during an unarmed robbery], he did no more. [The victim] immediately turned over what was demanded, and defendant took no action that could rise to the level of egregious conduct similar to sadism, torture, or excessive

brutality designed to substantially increase [the victim's] fear and anxiety. Although use of the tire iron was not necessary for the conviction of unarmed robbery, its use, without more, did not rise to a level that would require an assessment of 50 points for OV 7.

Finally, in *People v Alexander*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 364063); slip op at 14, this Court concluded that a score of 50 points for OV 7 was not warranted. The *Alexander* Court explained:

> In the instant matter, defendant was convicted of torture which requires proof beyond a reasonable doubt that (1) defendant intended to cause cruel or extreme physical or mental pain and suffering, (2) defendant inflicted great bodily injury, and (3) the complainant was within defendant's custody and control. The evidentiary record does not demonstrate that defendant engaged in conduct— beyond the minimum necessary to commit the offense—to warrant an assessment of 50 points. Defendant's act of binding, or allowing [the codefendant] to bind, MLA with zip ties on numerous occasions [is] patently troubling behavior; however, there was no testimony presented that defendant committed any additional acts during the binding incidents that would constitute further torture, sadism, excessive brutality, or similarly egregious conduct, *such as yelling [at] or taunting MLA, physically discipling the minor child while he was restrained, or otherwise causing injuries beyond the "great bodily injury" that served as the basis of the torture conviction*. [*Id*. (emphasis added).]

In this case, defendant used force to penetrate the victim's vagina with his penis despite her kicking and saying "no." She was 5 feet 3 inches tall and defendant was bigger, heavier, and stronger than she, so she was unable to get up off the futon in the garage. The PSIR indicates that (1) defendant had "climbed on top of [the victim] and forced his knees into her thighs," (2) "she was unable to move while being pinned to the futon," and (3) "she was fearful at this time because she realized she could not over-power [sic] [defendant] and felt as if she was trapped." The victim was crying. When she protested louder, defendant "grabbed her by the back of the head stating, "Shut up my sister is in the other room." Upon making this statement, "[defendant] pushed [her] head towards the pillow and forced her to be quiet by shoving her head into the pillow." As a result of the assault, the victim had bruises on her thighs and her vagina was "swollen and bruised on the inside." At sentencing, the victim explained that she would "never be able to erase the feeling of having my head shoved into a pillow while being raped" or the "sound of me screaming and yelling and begging for him to stop."

Unlike the defendant in *Lydic*, defendant did not taunt the victim. However, the *Lydic* Court, in discussing the "similarly egregious" phrase from the statute, made reference to the defendant's "infliction of humiliation and other emotional suffering" upon the victim. *Lydic*, 335 Mich App at 499. Here, by grabbing the victim's head and pushing of her face into a pillow, defendant inflicted humiliation and emotional suffering upon her. As for *Rodriguez*, that case involved the defendant's standing outside a vehicle and threatening to use a knife on someone in the vehicle. *Rodriguez*, 327 Mich App at 576. In contrast, the victim in this case was actually physically manipulated in a humiliating, frightening, and physically aggressive manner. And in *Alexander*, examples of acts that would constitute further torture, sadism, excessive brutality, or

similarly egregious conduct were described as "yelling or taunting MLA, physically discipling the minor child while he was restrained, or otherwise causing injuries beyond the 'great bodily injury' that served as the basis of the torture conviction." *Alexander*, ___ Mich App at ___; slip op at 14. Here, defendant grabbed the victim by the head, told her to "shut up," and forced her head into a pillow while penetrating her. He caused tears and bruising in her vagina, which went beyond the mental injury serving as the basis for the CSC-I offense.

In light of the caselaw and the facts of this case, it is clear that defendant's conduct was similarly egregious to excessive brutality. "[E]xcessive brutality" is defined as "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds by *People v Hardy*, 494 Mich 430, 448; 835 NW2d 340 (2013). When the entire record—including the trial testimony, the PSIR, and the statements at sentencing—is viewed as a whole, it is apparent that defendant's actions amounted to something akin to savagery and cruelty beyond the "usual" brutality of the offense because, even though he had already pinned down the victim, he shoved her head into a pillow while she was screaming and crying, told her to shut up, and caused bruising and tears to her vagina. And a reasonable inference from the facts is that defendant's predation was designed to substantially increase the fear and anxiety of the victim. See *People Horton*, 345 Mich App 612, 616; 8 NW3d 622 (2023) ("The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable.") (quotation marks and citation omitted)).

In sum, the trial court did not clearly err by scoring OV 7 at 50 points because defendant's conduct was similarly egregious to excessive brutality and was designed to substantially increase the victim's fear and anxiety.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michelle M. Rick